UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                                                                 :

THE CONSULATE GENERAL OF THE       :   Civil Action No.:
REPUBLIC OF TURKEY,                               :

                         Plaintiff,        :   **COMPLAINT**

   -against-                                     :

CRESA PARTNERS, LLC                   :

                        Defendant.      :

-------------------------------------------------------------- X

       Plaintiff The Consulate General of the Republic of Turkey ("Owner" or "Consulate General"), by and through its attorneys, Herrick, Feinstein LLP, as and for its Complaint against Defendant Cresa Partners, LLC ("Cresa"), alleges as follows:

## INTRODUCTION

       1.     This action seeks the recovery of damages stemming from Cresa's anticipatory breach of an Agreement for Delivery of Program Manager, Project Manager and Owner's Representative Services (the "Contract") which required Cresa to provide project management, program management, and Owner representative services in connection with the demolition of an 11-story building in New York City and construction of a new 30-story building in its stead.

       2.     In return for its services, Cresa would be compensated up to a maximum fee of $2,280,000.

       3.     The construction project was anticipated to take three years and a monthly fee schedule was calculated on the basis of such term (plus certain extensions), with no further payments.

4. Now, more than four years after the Contract was signed, the construction project is still far from complete.

5. On September 9, 2016, Cresa unconditionally repudiated the Contract, yet still continues to perform services under the Contract.  Cresa has advised Owner that they will cease providing services in the near future but has not provided a definitive stop date.

6. Accordingly, Owner has been forced to bring this action in order to recover the damages it has suffered and will continue to suffer as a result of Cresa's anticipatory breach of the Contract.

## THE PARTIES

7. Plaintiff Owner is an agency or instrumentality of the Government of Turkey and is located at 825 Third Avenue, 28th Floor, New York, NY 10022.

8. Upon information and belief, Defendant Cresa is a foreign limited liability company organized and existing under the laws of the State of Delaware, with its principal place in Massachusetts.

## VENUE AND JURSIDICTION

9. This Court has subject matter jurisdiction over Owner's claims pursuant to 28 U.S.C. § 1332 as this is a dispute between a foreign state and citizens of a foreign state.  The amount in controversy exceeds $75,000.

10. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District and a substantial part of the property that is the subject of the action is situated in this District.

11. This Court has personal jurisdiction over Cresa pursuant to CPLR §§ 301 and 302(a)(1), 302(a)(4) because Cresa: (i) regularly does business in New York; (ii) transacts

business within New York; (iii) contracts to supply services in New York; and (iv) has offices in New York City.

## FACTUAL BACKGROUND

### A. Background of the Parties

12. The Consulate General in New York is one of five Turkish consular missions in the United States. Since its inception as the first consular representation of the Republic of Turkey in the USA in 1925, the Consulate General has implemented its consular services and diplomatic duties throughout New York, New Jersey, Pennsylvania and Delaware.

13. Cresa is an international commercial real estate firm with over 50 offices in North America. Upon information and belief, Cresa has significant experience in the demolition and construction of major cultural and governmental buildings in New York City and the State of New York.

### B. Cresa Enters Into A Contract With Owner For The Demolition And Construction Of A New Building

14. Owner and Cresa entered into the Contract on or about October 18, 2012 for the demolition of an existing 11 story building at 821 United Nations Plaza in New York City (the "Site") and the construction of a new 30-story building with an additional three stories below grade, with approximately 30 parking spaces (the "Project").

15. Owner and Cresa anticipated that the Project would take 36 months to complete (the "Term"), with Cresa receiving monthly payments ("Service Fees") during the Term totaling $1.9 million, with certain additional fees as explained below.

16. The Contract provides clear terms that govern the relationship between the Owner and Cresa.

17. Section 1, titled "The Services", provides that the scope of Cresa's work is initially defined in Exhibit A (the "Work Statement") and Exhibit B (the "RFP") to the Contract.

18. Section 1.d.(ii) expressly notes that the scope of the Contract is subject to change, and Cresa agrees that there shall be no additional cost or expense allowed for reasonable changes in scope.

19. Section 1.d.(iii) requires Cresa, without additional compensation, to also perform any additional work or services not expressly included in the Work Statement that are customarily provided on projects of similar size and scope in New York.

20. Section 3, titled "Compensation" sets forth the schedule of fees due to Cresa under the Contract.

21. Specifically, in Section 3.a, Cresa agrees to be paid $1.9 million as a fixed fee for its services, with payments to be made monthly over the 36 month Term.

22. The Contract anticipates that the work might not be completed on time and provides for the following payments during any extended performance: for months 37-39, no additional compensation; after month 39, at Owner's sole discretion, Cresa may be required to continue under a "Work Increase", and be compensated $52,778.78/month until $380,000 additional compensation has been paid (which would be during the eighth month of the Work Increase); after the Work Increase compensation is exhausted, Cresa would be required to complete the Project with no further compensation.

23. Section 4, titled "Term, Termination, and Suspension" allows Owner to terminate the Contract on five days' notice (Section 4.c.(iii)), but only allows Cresa to terminate if the Owner becomes insolvent or under the control of a receiver (Section 4.c.(ii)).

24. Section 13, titled "Miscellaneous," provides (i) that modifications are only valid if in writing; and (ii) New York law governs.

C. **Cresa Anticipatorily Breaches The Contract**

25. The Term of the Contract has now ended but the Project is far from complete. Indeed, it is anticipated that the Project will take an additional three years to be completed.

26. Cresa has been paid in full under the Contract.

27. By letter dated September 9, 2016, the Executive Project Manager for the Project, who is employed by Cresa, notified Owner that Cresa will officially cease work on the Project effective September 9, 2016.

28. Cresa's reason for stopping work on the Project is as follows:

> On August 23, 2016, we have reached the maximum limit of the current [Contract], inclusive of the original cost plus the allowed 20% increase;
>
> Per the [Contract], no further compensation to Cresa is possible even though, through no fault of Cresa, there remains at least three more years of work to completion.
>
> The Cresa team can't possibly devote three years of additional work with no reasonable expectation for compensation.

29. Although Cresa continued providing services to Owner following the September 9, 2016 letter, Cresa has advised Owner that they will cease providing services in the near future but has not provided a definitive stop date.

30. As a result of Cresa's anticipatory breach of contract, Owner is left with an unfinished construction site and an uncertain future. Indeed, Owner is faced with delays in

completion of the Project, which will inevitably lead to increased costs in hiring other contractors and entering into additional equipment leases.

**FIRST CLAIM FOR RELIEF**
(Anticipatory Breach of Contract)

31. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 30 as if fully set forth herein.

32. The Contract is a fixed fee agreement calling for Cresa to perform services with no term limit until the Project is completed, excluding agreed-to modifications, and requires Cresa to complete the Project for a maximum fee of $2,280,000.

33. Cresa has unconditionally repudiated the Contract by stating in a formal letter to Owner that "we wish to inform you that Cresa will officially seek work effective this date September 9, 2016."

34. Although Cresa continued providing services to Owner following the September 9, 2016 letter, Cresa has advised Owner that they will cease providing services in the near future but has not provided a definitive stop date.

35. In other words, Cresa has anticipatorily breached the Contract.

36. Owner has at all relevant times performed under the Contract, which includes, but is not limited to, paying Cresa in full for its services rendered.

37. As a result of the foregoing, Owner has been damaged by Cresa in an amount to be determined at trial, but believed to be no less than $500,000.

**DEMAND FOR RELIEF**

Wherefore, Owner respectfully requests that the Court:

(a) On its First Cause of Action, award damages in an amount to be

determined at trial, but believed to be no less than $500,000 in compensatory damages, reliance, and consequential damages; and

   (b) Grant such other and further relief as this Court may deem just and proper.

Dated: New York, New York
    November 4, 2016

             HERRICK, FEINSTEIN LLP

             By: /s/ William R. Fried
               William R. Fried
                (wfried@herrick.com)
               Scott C. Ross
                (sross@herrick.com)

             Two Park Avenue
             New York, New York 10016
             (212) 592-1400

             *Attorneys for Plaintiff The Consulate General of the Republic of Turkey*